**E-FILED**
Monday, 05 November, 2007  01:20:51 PM
Clerk, U.S. District Court, ILCD

RECEIVED

NOV - 5 2007

U.S. CLERK'S OFFICE
URBANA, IL

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

TERRY R. CLARK

Plaintiff,

vs.

TIMOTHY F. BUKOWSKI,
Sheriff of Kankakee County;

MICHAEL D. DOWNEY,
Chief of Corrections;

P. CARL BROWN,
Assistant Chief of Correction;

Sgt. SHANICKA STEVENSON,
Senior Officer for Disciplinary Board;

Lt. K. SMITH;

Sgt. TODD SCHLEONDORF

C/O LATESHA JOHNSON

Case No: 07-2204

(To be supplied by the Clerk of this Court)

CHECK ONE ONLY:

__X__   **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983 U.S. Code** (state, county, or municipal defendants)

_____   **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE 28   SECTION 1331 U.S. Code** (federal defendants)

_____   **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

## I.  Plaintiff(s):

**TERRY R. CLARK**

A.  Name: _____

**NONE**

B.  List all aliases: _____

**JCDC # 200029,  IDOC K61666**

C.  Prisoner identification number: _____

**JEROME COMBS DETENTION CENTER**
**3050 JUSTICE WAY, KANKAKEE, IL 60901**

D.  Place of present confinement: _____

**Mailing Address: 863 S. Greenwood Ave. Kankakee, IL. 60901-5208**

E.  Address: _____

(If there is more than one plaintiff, then each plaintiff must list his or her own name, aliases, I.D. number, and current address according to the above format on a separate sheet of paper.)

## II.  Defendant(s):

(In A below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendant is provided in B and C.)

**TIMOTHY F. BUKOWSKI,**

A.  Defendant: _____

**SHERIFF OF KANKAKEE COUNTY**

Title: _____

Place of Employment: _____

**MICHAEL D. DOWNEY**

B.  Defendant: _____

**CHIEF OF CORRECTIONS**

Title: _____

**3050 JUSTICE WAY, KANKAKEE, IL 60901**

Place of Employment: _____

**P. CARL BROWN**

C.  Defendant: _____

**ASSISTANT CHIEF OF CORRECTION**

Title: _____

2

**3050 JUSTICE WAY, KANKAKEE, IL 60901**

Place of Employment: _____

**SHANICKA STEVENSON**

D.  Defendant: _____

**SGT. SENIOR OFFICER FOR DISCIPLINARY BOARD**

Title: _____

**3050 JUSTICE WAY, KANKAKEE, IL 60901**

Place of Employment: _____

**TODD SCHLEONDORF**

E.  Defendant: _____

**SGT.**

Title: _____

**3050 JUSTICE WAY, KANKAKEE, IL 60901**

Place of Employment: _____

K. SMITH;

F.  Defendant: _____

LIEUTENANT

Title: _____

**3050 JUSTICE WAY, KANKAKEE, IL 60901**

Place of Employment: _____

**LATESHA JOHNSON**

G.  Defendant: _____

**CORRECTIONAL OFFICER**

Title: _____

**3050 JUSTICE WAY, KANKAKEE, IL 60901**

Place of Employment: _____


### III. Exhaustion of Administrative Remedies

You are required to exhaust all your available administrative remedies before bringing an action in federal court.

A.  Is there a grievance procedure available at you institution?

   **YES (X)**  NO ( ) If there is no grievance procedure, skip to F.

B.  Have you filed a grievance concerning the facts in this complaint?

   **YES (X)**  NO ( )

C.  If your answer is YES:

3

1. What steps did you take?
   **I HAVE PROPERLY FILED REQUESTS AND GRIEVANCES IN EVERY INCIDENT, FOLLOWING THE CHAIN OF COMMAND, FROM ADMINISTRATION OFFICERS TO THE CHIEF OF CORRECTIONS.**

2. What results?
   **HARDLY ANY ANSWERS AND RESPONSES', WITHOUT ANY RESULTS**

3. If the grievance was not resolved to your satisfaction, did you appeal? What was the result (if there was no procedure for appeal, so state.)

   **NO APPEAL SYSTEM IS IMPLEMENTED IN THE FACILITY**

D. If your answer is NO, explain why not:

E. Is the grievance procedure now completed?  **YES (X)** NO ( )

F. If there is no grievance procedure in the institution, did you complain to authorities? YES ( **X** )  NO ( )

G. If your answer is YES:

1. What steps did you take?
   **I HAVE FILED COMPLAINTS WITH ILLINOIS JAIL STANDARDS AND TO THE LOCAL SHERIFF, ALSO COMPLAINED TO THE CHIEF JUDGE OF**

**THE COUNTY COURT**

2.  What was the result?
**LACK OF RESPONSE.**

H.  If your answer is NO, explain why not:

IV. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court (including the Central and Southern Districts of Illinois):**

A.  Name of case and docket number:

B.  Approximate date of filing lawsuit: _____

C.  List all plaintiffs (if you had co-plaintiffs), including any aliases: _____

5

D. List all defendants: _____

_____

_____

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____

F. Name judge to whom case was assigned:_____

_____

G. Basic claim made: _____

_____

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _____

_____

_____

I. Approximate date of disposition: _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST CASES THEY HAVE FILED.**

## V. FACTUAL BACKGROUND:

State here as briefly as possible the facts of your case. Describe precisely how each defendant is involved. Include also the names of other persons involved, dates, and places. **Do not give any legal argument or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

1.    Plaintiff had been arrested on August 28, 2004 for DUI. He had been placed in the Kankakee Sheriffs' Corrections Department at 400 East Merchant Street, Kankakee IL 60901, and moved to a new facility Jerome Combs Detention Center, [JCDC] on in February 10th, 2005. Where he is detained and awaiting a sentence.

2.    Plaintiff had been placed on his first day of arrest in the solitary confinement unit, for reasons unknown to the plaintiff.

3.    During plaintiff's admission, he had stated that he is on psycho-tropic medications, he is suffering from impulse control disorder, bio-polar disorder, paranoid disorder, adjustment disorder, and he has back and neck injuries and major arthritis in his lower back, and he requires a constant medical observation and care.

4.    Arresting deputies had not taken plaintiff's complains seriously, and disregarded his claims when booking plaintiff in to the Detention Facility.

5.    Placing plaintiff in the solitary confinement on the first day of his booking without medical examinations and adequate evaluation, deprived plaintiff of basic necessities of the detention center, and medical monitoring he needs.

6.    Plaintiff had filed numerous request's to see his doctor, or a doctor provided by the detention center. Medical staff had disregarded plaintiff's pleadings and request's, and refused to notified his own doctor about plaintiff's condition.

7.    Through the month of September and until October 27th, plaintiff went through

painful and psychotic withdraws from his dose of medication, suffered insomnia, and outburst of paranoia and blackouts.

8.    When finally allowed to see the doctor, plaintiff's dose and type of medication had been altered causing him to accustom to new medication which again caused relapses and paranoia attacks while still being in the solitary confinement.

9.    In February 2005, plaintiff had been moved to a new facility JCDC, still under construction. His cell in solitary confinement had no heat and only cold running water. While in new surroundings plaintiff had more relapses of his paranoia and adjustment disorder, also his bi-polar disorder took a turn for worst.

10.    In April 2005, plaintiff had been moved to a general population, B-Dorm, and then 10 days later to a A-Dorm.

11.    Also, the same month, plaintiff had seen his own doctor for the last time. Upon agreement that the medical staff and doctors of JCDC, will schedule and call his doctor for appointments and required monthly consultations. None had been schedule since that time, even that plaintiff requires to be examined on the monthly bases. Also his medication requires him to have regular blood screening, and none of these things had been done for him.

12.    In September of 2005, plaintiff had asked for legal books and material. Specifically, plaintiff asked for Illinois Criminal and Traffic Statute's and for Illinois County Jail Standards Manual.

13.    In October of 2005, plaintiff filed several grievances with the institution for not supplying proper legal material to him and other inmates. These grievances had caused him to be harassed by few officers especially Sgt. Todd Schleondorf. Plaintiff had been fired from a trusted worker position by Sgt. Schleondorf, verbally abused, " . . . you will not have this jail written up

8

for your stupid requests . . . ", and moved to a B-Dorm again.

14.    In B-Dorm, officer Grant, had been allowing young inmates to make wild parties on his night shift. Young violent inmates harassed officer Grant, and disobeyed his orders. Officer Grant allowed this to continue, because he was afraid for his safety. Plaintiff wrote several grievances against officer Grant and several inmates. Officer Grant had been dismissed or suspended for a certain period of time for these violations. Next, substitute night shift officer, correctional officer Johnson, had harassed plaintiff, for writing these grievances against inmates and officer Grant. Plaintiff suffered from insomnia and paranoia, and officer Johnson intentionally and willfully engaged in the conversations with young inmates, and verbally abused and embarrassed Mr. Clark in front of almost 48 inmates, provoking them to engage with Mr. Clark physically and verbally. Like, " . . . Mr. Clark is a snitch, and he will write you up if you don't stop . . . ", " . . . any of you young n**** use your head and stay away from that white m*********** and these wetbacks . . . ", " . . . what the f**** is this m********* doing out of his bed . . . ".

15.    Officer Johnson had made racial comments and encourage other inmates (especially, African American) against plaintiff. She also wrote false reports on plaintiff's management card and caused other officers to view Mr. Clark negatively. Her prejudice against plaintiff had been motivated from a sexual relationship she engaged in while on duty, with several inmates.

16.    Plaintiff suffered stress and paranoia from the hostile surroundings that had been created by officer Johnson. Plaintiff also had been cornered and physically abused by other inmates, during officers Johnson's watch.

17.    In late November 2005, plaintiff had been moved again to E-Pod. Sgt. Schleondorf had not been aware of this movement of the plaintiff, and when he observed plaintiff to be

housed in that unit. He again harassed Mr. Clark and try to move him on three different occasions to a different unit that houses younger and more violent inmates. Also, when on the move to a new unit, Sgt. Schleondorf had threaten plaintiff, he specifically expressed fact that if plaintiff doesn't want to stay in the housing unit Sgt. assigns him, plaintiff will be teazed, saying "If you don't like the rules in my jail cop out or bond the f*** out, ...either make your bed or I'll f***** taze your a**... those are the only two options you have".

18.     Classifications administrator had assigned plaintiff to a certain group of inmates, based on his, age, offense, medical history, physical abilities and prior criminal history. However, Sgt. Schleondorf and Lt. Smith, had try to moved plaintiff to a unit he is not classified and fit to live in. Because of this plaintiff had suffered a nervous breakdown and his depression worsened to a severe case of paranoia and mental disorientation. Succeeding in their movement, plaintiff had been assigned to a B-Dorm and then E-Pod again, this time with more disability to plaintiff. Sgt. Schleondorf had assigned an upper bunk for the plaintiff, knowing that he suffers from neck and back injury and severe case of arthritis. Being only one out of five inmates within the same or older age group, and approximately thirty inmates under the age of twenty-five, this assignment had been unnecessary, cruel and harsh for plaintiff. Moreover, Sgt. Schleondorf had verbally abused and made threats again to the plaintiff, saying " . . . I promise you as long as you stay here you will never be placed in general population again . . . ". He also placed the plaintiff on a lock down basis for no rule violation or any other reason. Sgt. Schleondorf abused his powers by regulating plaintiff's movement and doing this intentionally every time he came in to contact with the plaintiff, and doing this within the rule not to exceed the eight-day grace period prior to disciplinary hearing.

19.     E-Pod Housing is a Pre-Classification unit, it houses various offenders including,

10

minor and felony offenders, State and Federal inmates, and most important they are all in transit to the destination units they will be assigned to, through the classification administrator. Plaintiff had been abused by those inmates and degraded physically and verbally.

20.     During nine months he had been assigned to E-Pod unit, plaintiff had engaged in rehabilitation classes, AA meeting, became a certified tutor, housing unit worker. Also during this time he had been provided by the detention center, with physical therapy for his neck and back injuries, also he had stabilized his depression and mental disabilities, and stop taking his medication for his bi-polar disorder and his other medical disabilities.

21.     In August of 2006, again Lt. Smith and Sgt. Schleondorf had fired plaintiff from his working position, claiming that plaintiff is not allowed to be a working inmate due to his participation in physical therapy, that was prescribed especially as part of his treatment by his therapist. A day later plaintiff had been moved by Lt. Smith and Sgt. Schleondorf to a new Dorm Unit, K-A-Dorm, housing only violent felony offenders. Sgt. Schleondorf had suggested that this movement is per orders of the Chief of Corrections Michael Downey. However, plaintiff had filed grievances with chief of corrections and had found out later that he was not authorized to be moved into the new unit, this was only a pretext of Sgt. Schleondorf and Lt. Smith to move plaintiff again, and to watch him with amusement on how paranoid and disoriented plaintiff becomes in new environment.

22.     While being moved out of his familiar surroundings, plaintiff's panic attacks, paranoia attacks, disorientation, depression, and his bi-polar disorder had emerged. He in fact had asked and filed a medical request to see his doctor or any other doctor to evaluate his condition and prescribe proper medication, however, the medical staff's answer had been "no" written back to him in the response to his pleadings.

23.     Due to inmates and staff concerns, plaintiff had been moved 4 days later to K-B-Dorm, for his own health and security reasons. The same evening, Sgt. Schleondorf and Lt. Schwartz, placed plaintiff in segregation, reason was that plaintiff had allowed himself to be moved to a  K-B-Dorm. Sgt. Schleondorf stated that " . . . nobody had f***** permission to move you...".

24.     Again plaintiff had spent seven days in solitary confinement without any disciplinary violations on his behalf, only on a pretext of Sgt. Schleondorf.

25.     After plaintiff's grievances and other officers concerns Chief Downey had ordered plaintiff to be moved back into the E-Pod unit.

26.     While housed in E-pod unit, plaintiff had been harassed by a Federal Inmate, Steven Carter. Plaintiff had been physically and verbally abused by inmate Carter, also inmate Carter had encouraged other inmates to discredit plaintiff's character. Plaintiff wrote several grievances against inmate Carter's conduct. Housing officers had informed Asst. Chief Brown of this conduct, and asked the Asst. Chief Brown to remove inmate Carter from population. Asst. Chief brown refused to remove, or separate inmate Carter, encouraging the continuous conduct of inmate Carter. Personal grievance to Chief of Corrections Michael Downey, and specified more or less what kind of relationship inmate Carter has with some Correctional Officers and especially Asst. Chief Brown, and what form of favoritism inmate Carter receives from Correctional Officers and again especially from Asst. Chief Brown.

27.     This grievance in a form of a private letter had been intercepted by Asst. Chief Brown, and because of it plaintiff had been placed in the Max-Segregation Unit on December 28th 2006,

28.     On December 31st 2006, in the presence of Officer Bazillian, Officer Latte, and Cpl.

Jackson, Sgt. Stevenson stated, "... according to your management card there is no reason for you to be in the Max-Segregation Unit...", "... I can see a conflict pattern developing between you and Lt. Smith and Sgt. Schleondorf...","... I'll move you back to E-Pod...".

29.    However, on January 9th 2007, rule violation had been brought against the plaintiff, with Asst. Chief Brown, Sgt. Stevenson stated "... you are in Max-Segregation indefinitely for several Rule Violation...". Although, plaintiff never had any major violations and especially violations for physical abuse, fights, etc.

30.    On January 10th 2007, plaintiff had requested copy of the formal complaint written by the officer on duty. Sgt. Stevenson's response was "... officer who wrote down the incident suppose to give you a copy...". Next day plaintiff again had asked for a copy of the incident report, stating refusal, again answer from Sgt. Stevenson had been "... I have not refused you a copy...". However, there was no copy of the incident report with the responses from Sgt. Stevenson. In fact, violations that plaintiff had been accused of never been presented in front of the disciplinary board and plaintiff had never received any copies of the incident report other than simple statement without any proof from Sgt. Stevenson. Sgt. Stevenson also made few sarcastic remarks towards plaintiff, like "...why are you worry about this so much its not like you're going to go prison for it...", and also tried to discourage plaintiff from further pursuing the issue.

31.    Moreover, Sgt. Stevenson claimed that incident report had been written by Officer Young, who in fact stated "...I have never written any incident violations against you, nor would I, since you're benefit to E-Pod...". This shows plain vindictiveness and prejudice on a part of Sgt. Stevenson and Asst. Chief Brown, filing false reports and making plaintiff suffer in the segregation unit for no apparent reason.

13

32.   Specifically, plaintiff had filed several grievances to Chief Downey while in segregation and also send a letter to Illinois Jail Standards Office. However, all of the grievances and letters had been intercepted by Sgt. Stevenson by orders of Asst. Chief Brown, and very few were responded to and had been without specific answers, just blunt answers like "...you know why you are there...".

33.   Chief Downey had investigated and informed internal investigative unit for Kankakee Sheriff's Department. While still in segregation on February 27th, 2007 plaintiff had been interviewed by the investigator from the internal dep. of Kankakee County in front of camera, with Chief Downey present.

34.   When plaintiff had asked to receive a copy of the investigation, he was confronted with positive answer, however, he had never heard from the investigator nor received a copy of the investigation in this matter. Also later plaintiff had filed a requests to receive a formal copy from the Detention Administrator, and that action also was fruitless.

35.   On February 28th, 2007, plaintiff had been moved from solitary confinement in to the Max unit and later the same day moved in to pre-classification unit E-pod, where he is currently housed and working as a unit worker.

36.   Several officers had indicated and stated to plaintiff, that segregation confinement he had endured was due to retaliation for exposing close relationship of Asst. Chief Brown with several Federal Inmates, additionally to the relationship/friendship of Asst. Chief Brown and Sgt. Stevenson.

37.   Moreover, one of the rules made in part by Chief of Corrections Michael Downey, is to screen context of legal documents being notarized by the staff notary public. This rule prevented plaintiff to freely write details and specific facts of his case to his attorney, and also

14

prevented him from making proper affidavits. This rule also prevents any inmate from filing any grievance against the facility, since almost all of the affidavits and written statements have to be notarized. According to Illinois Notarial Act, there is nothing specifically stated that context of the document being notarized has to be screened by the notary and especially Chief Downey himself, which violates the privacy act. Specifically, Chief Downey had implemented enforcement of this rule with all the correctional officers. Cpl. Jackson stated to the plaintiff, "... if you don't want the employees of the jail know details of your legal paperwork, you should find other means to have them notarized...".

38.    Additionally, legal mail is being opened and screened without inmate being present, most of the times mail comes opened and sometimes not complete and lost.

39.    More, the employees, and correctional officers at the Jerome Combs Detention Center, handling plaintiff's legal paperwork, neglect the importance of it, and cause to lose and lately misplace any legal paperwork, including copies of motions and legal mail.

40.    Another rule of the detention center recklessly violate fundamental medical rules of prevention against infectious diseases. Illinois Code of Correction and Illinois County Jail Standards, allows for use of the safety or electric razors, however, approval is for exclusive and individual use of these items. JCDC on the other hand, incorporates its own rule, does not sell or provide safety razors,  but provides electric razors, 2 or 3 to be use and shared among inmates in the same living quarters. This rule recklessly exposes individuals to dangerous transmitted diseases.

## VI. THE EFFECTS OF THE OFFICERS ILLEGAL ACTIONS ON PLAINTIFF

1.    Depriving plaintiff his medical attention, medication and proper care caused

plaintiff to developed more serious and severe complications in his mental disorders. Specifically, plaintiff has developed involuntary and spontaneous anxiety attacks and blackouts, uncontrollable paranoia, and his depression and insomnia had progressed in to a critical level.

2.      Inmates' verbal and physical harassment had caused plaintiff to suffer more severe attacks and relapses, and in conjunction with the lack of medical attention, caused plaintiff irreversible mental damage, and deepened the plaintiff's mental disability.

3.      Harassment and reckless conduct of the correctional officers, added and increased the degree of plaintiff's suffering and increased his mental disability. Additionally, placing plaintiff in the new surroundings, changing his living quarters so often, and being aware of his paranoia and disorientation disability, placed plaintiff in the hostile environment endangering his life and safety.

4.      Due to officers false allegations and false instigation to detainees, caused several physical conflicts with inmates, and personal injury to plaintiff. Where on-duty officers ignored plaintiff's physical confrontations with inmates.

5.      Rules of the detention center screening plaintiff's legal material and legal mail, and screening context of his legal work, impaired, and crippled plaintiff's legal defense. Moreover, the  negligent, improper handling, and loss of plaintiff's legal material to be send out or copied, caused plaintiff to have inadequate representation and proper legal process.

## FIRST CLAIM FOR RELIEF
### (Violation of Illinois County Jail Standards)

1.      Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

2.     Correctional officers, administrative members, and other employees had violated numerous rules and regulations according to Illinois County Jail Standards ILCS § 701.10 thru § 701.280. Specifically, violation of disciplinary proceedings, ILCS § 701.160 (a)(2) & (a)(4)(A) & (B) & (C) & (D) & (E), and Hygiene and Personal Care ILCS § 701.100 (b)(3), and Library services ILCS § 701.230 (a)(2) & (b), and mail procedures ILCS § 701.180 (e) & (f).

## SECOND CLAIM FOR RELIEF
### (Violation of V, VIII and XIV Amendment of U.S. Constitution)

3.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

4.     Simply imposing additional punitive conditions upon the plaintiff, placing plaintiff in atypical or significant hardship, without a reason or adequate process, violates U.S. Constitutional V Amendment due process clause. Additionally, his right to be free from cruel and unusual punishment under the eighth amendment was violated by placing plaintiff in segregation several times, exposing him to inhumane conditions of confinement for prolonged, unwarranted, and unnecessary time, abusing the detention facility rules to harass the plaintiff without giving him proper procedure to face the accusations he is charged with.

## THIRD CLAIM FOR RELIEF
### (Violation of First Amendment of U.S. Constitution)

5.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

6.     Defendants' by carrying out and/or asserting the right to carry out their screening procedures of context of legal material and legal correspondence, have impaired plaintiff's

ability to freely communicate with his counsel, to vigorously discuss all matters, and to petition the government for redress of grievances, all of which are modes of expression and association protected under the First Amendment to the United States Constitution, and also a crime punishable under Title 18 § 1702 "Whoever takes any letter ... to pry into the business or secrets of another"

7.    Moreover, carrying out the screening of the legal material by Chief of Corrections, being notarize by the on-staff notary public is in violation of Illinois Notary Act § 5 ILCS 312/6-102.

8.    Additionally, while in solitary confinement, Defendants' had prohibited the plaintiff to see the local minister visiting the Detention Center on weekly basis, and  exercise his freedom of religion.

## FOURTH CLAIM FOR RELIEF
### (Civil Rights Violation)

9.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

10.    Defendants' had intentionally subjected plaintiff to extreme intentional humiliation, degradation, and unequal treatment based upon plaintiff's race or status which became retaliatory and punitive. Plaintiff endured this treatment throughout his entire detention period.

11.    Plaintiff's physical health due to negligence and careless conduct of the correctional officers, caused plaintiff's health  to degrade, causing plaintiff to endure eight months of extreme painful physical therapy.

## VII.    Relief:

> State briefly exactly what you want the court to do for you. Make no legal arguments.
> Cite no cases or statutes.

All actions on behalf of the Defendants' had caused the plaintiff permanent damage to his

mental state, and his physical condition, the environment he had been placed in, and inhumane

handling of plaintiff could only work to his detriment. This case is a front page of mischief and

injustice, a powerful criminal indictment against Public Servant's. Continuing their illegal

actions, inflicting cruel and unusual punishment, abusing  institution's policies to cause harm,

negligently and recklessly exposing plaintiff to violent inmates and encouraging them to cause

harm to plaintiff can't be called proper.

Therefore, plaintiff respectfully request's that the HONORABLE COURT adopts in part or

whole, any or all of the suggestions below:

(a.)    Declare that Defendants' comply with the Illinois County Jail Standards, and that

the Administration takes proper measures to prevent any future violations, by ordering to

form an independent local branch, other than the Jerome Combs Detention Center, to

oversee the grievance procedures, work with disciplinary board, and conduct their own

investigations with inmates in the Jerome Combs Detention Center, and;

(b.)    Order a independent local branch to properly investigate defendants involved in

this complaint, and impose probational and disciplinary actions  against them, and:

(c.)       Order a probation period for the Jerome Combs Detention Center to assure

the further compliance with the Illinois County Jail Standards, and;

(d.)       Award damages to plaintiff, for physical pain and suffering, humiliation,

slander, definition of character, in the hands of defendants', and;

19

(e.)        Award punitive damages to plaintiff, for inextricable damages to his mental

and psychological state, and permanent mental scaring made by the defendants, and;

(f.)        Award costs, including an award of attorneys' fees under the Equal Access

to Justice Act, 28 U.S.C. § 2412(d)(1)(A);

(g.)        Award such other relief as the HONORABLE COURT may deem just and

proper.


Respectfully submitted,


BY: _____

*Plaintiff*; TERRY RAY CLARK


## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the
best of my knowledge, information and belief.


Signed this __2__ day of __NOV__, 2007, _____

*Plaintiff*; TERRY RAY CLARK

Mailing Address:        Terry Ray Clark
                        863 S. Greenwood Ave.
                        Kankakee, IL. 60901-5208